## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Gary Allen Washington and<br>Michele Anne Washington,<br><br>                       Debtors. | C/A No. 11-00625-DD<br><br>Chapter 11<br><br>**ORDER DENYING MOTION TO<br>EXTEND AUTOMATIC STAY** |

This matter is before the Court on Gary Allen Washington and Michele Anne Washington's ("Debtors") Motion to Extend Automatic Stay ("Motion") filed February 7, 2011. Objections to Debtors' Motion were filed by South Carolina Community Bank ("Creditor") on February 14, 2011 and the United States Trustee ("UST") on February 16, 2011. A hearing on Debtors' Motion was originally scheduled for February 28, 2011 but was continued after the parties indicated that the hearing would take a substantial amount of time. A hearing was held on Debtors' Motion on March 2, 2011. At the conclusion of the hearing, the Court took the matter of stay extension under advisement. After consideration of the evidence and arguments presented at the hearing, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Debtors filed for chapter 11 protection on February 3, 2011. Debtors had previously filed a chapter 11 case on November 2, 2009. That case was dismissed by an Order entered by this Court on September 24, 2010. Debtors appealed the dismissal of that case, and their appeal is currently pending before the District Court. Because their previous chapter 11 case was dismissed only a few months before Debtors filed the current case, the automatic stay will expire on March 5, 2011, thirty days after the current filing. Debtors filed their Motion to prevent that from occurring and to ask that the stay be extended as to all creditors.

Debtors own a personal residence as well as three additional properties. These additional properties are used as residential and commercial rental properties by Debtors. The residential properties are a single condominium located at 7602 Hunt Club Road and an apartment building containing four units located at 2917 River Drive. Debtors' commercial properties are located at 1811 Gervais Street and 1815 Gervais Street. Mr. Washington also owns and operates two other businesses, Carolina Procurement Institute ("CPI") and Carolina Encouragement Center. Debtors' income consists of Mrs. Washington's salary from her job as a telephone operator manager, Mrs. Washington's VA benefit, Mr. Washington's income from CPI, and income from Debtors' rental properties. Schedule I discloses a combined average monthly income, after payroll deductions, of $4,159.55.

Debtors' secured debt consists of multiple mortgages on Debtors' various properties. After Debtors' previous case was dismissed, Debtors apparently paid off the small balance of the first mortgage on their primary residence, but did not make any other significant payments to creditors before filing the present case. Debtors' current case was filed on the morning of a scheduled foreclosure sale by Creditor. Debtors' Schedule D discloses $851,806.52 of secured debt, and Debtors' Schedule F discloses $329,118.99 of unsecured debt.

At the hearing on Debtors' Motion, testimony was presented on CPI's income and expenses, as well as Debtors' income and expenses from various leases of Debtors' rental properties. Mr. Washington testified as to the increase in income for CPI, claiming that since September 2010 the business has received over $430,000. On cross-examination, Mr. Washington revealed that a significant part of this money was not actually income of CPI, but instead simply passed through CPI in payment of contract obligations of businesses for which CPI provides consulting services. Mr. Washington additionally testified concerning the existing

leases of the rental properties.  The leases were introduced into evidence.  Also in evidence are

rent rolls, February 2011 income and expense information, and several financial statements and

projections. Much of the testimony was confusing and inconsistent.   For example, Mr.

Washington named numerous leases when asked about leases that had been signed since

September 2010; however, when asked again if all of these leases came into being after

September 2010, he merely stated that he thought so.  Many of the Gervais Street leases are with

start-up small businesses for which CPI provides consulting services.   These businesses are

drawn to the Gervais Street properties and to CPI in hopes of finding new business and do not

have otherwise adequate resources to pay expenses.  Mr. Washington also, as discussed below,

was uncertain who is residing at the River Drive property, how much rent tenants are paying, and

which tenants are current on their lease obligations.   Overall, no clear picture of Debtors'

financial circumstances emerged.

## <u>CONCLUSIONS OF LAW</u>

11 U.S.C. § 362(c)(3) states:

> [I]f a single or joint case is filed by or against a debtor who is an
> individual in a case under chapter 7, 11, or 13, and if a single or
> joint case of the debtor was pending within the preceding 1-year
> period but was dismissed, other than a case refiled under a chapter
> other than chapter 7 after dismissal under section 707(b) –
> (A) the stay under subsection (a) with respect to any action taken
> with respect to a debt or property securing such debt or with
> respect to any lease shall terminate with respect to the debtor on
> the 30th day after the filing of the later case;
> (B) on the motion of a party in interest for continuation of the
> automatic stay and upon notice and a hearing, the court may extend
> the stay in particular cases as to any or all creditors (subject to such
> conditions or limitations as the court may then impose) after notice
> and a hearing completed before the expiration of the 30-day period
> only if the party in interest demonstrates that the filing of the later
> case is in good faith as to the creditors to be stayed; and
> (C) for purposes of subparagraph (B), a case is presumptively filed
> not in good faith (but such presumption may be rebutted by clear

> and convincing evidence to the contrary) — (i) as to all creditors,
> if – . . . (III) there has not been a substantial change in the financial
> or personal affairs of the debtor since the dismissal of the next
> most previous case under chapter 7, 11, or 13 or any other reason
> to conclude that the later case will be concluded . . . if a case under
> chapter 11 or 13, with a confirmed plan that will be fully
> performed.

A presumption of bad faith under section 362(c)(3)(C)(i)(III) arises if the court finds that there has been no substantial change in the debtor's financial affairs since his previous case. The same presumption arises if the Court determines that any confirmed plan will not be fully performed. In the present case, there has been no substantial change in circumstance and it is not likely that a plan will be fully performed. Debtors' Schedules in the present case show substantially less income than Debtors' Schedules in the previous case. Mr. Washington stated this was because in the previous case he overestimated how much income he was making; as a result, his income in the previous case was actually much lower than the Schedules indicated. Mr. Washington also indicated that although his Schedule I only provides for him to receive $900 per month as "owner's draw" from CPI, he could actually take compensation of as much as $4,000 per month. While Debtors contend that the actual income at this time is an improvement over the income actually received in the previous case, the Court notes that the current income claimed by Debtors is less than the income claimed by Debtors at the time of the disclosure statement hearing and hearing on dismissal in the previous case.

One of Mr. Washington's main reasons for contending his financial circumstances have substantially changed is that he has opened separate financial accounts for each of his rental properties and has begun to closely track all income and expenses. However, Mr. Washington's testimony, as well as many of the documents Mr. Washington presented to the Court at the hearing, was inconsistent and confusing. Mr. Washington seemed uncertain regarding the

amount of rent being paid by his tenants and whether those tenants were current on their rent payments.  With respect to future rental income, Debtors project an increase in revenue of over $2,000, but when questioned about the new tenants who would contribute to this increase, Mr. Washington could only identify $1,495 worth of new leases and admitted that $600 of the $2,000 would come from CPI, which often did not pay rent in the past.

Additionally, Mr. Washington projects that his expenses going forward will be far less than they have been in the past.  He stated that his expenses have been extremely high recently due to the theft of an air conditioning unit and that he has taken security measures to prevent this from occurring again.  However, this is one of several instances of theft that has occurred on the property, and Mr. Washington testified that he changed his insurance to raise his deductible so that his premiums would decrease.  This suggests substantial expenses in the future in the likely event that Mr. Washington's property is again the target of theft.  Additionally, even prior to the thefts occurring, it appears from the historical financial information presented at the hearing that Mr. Washington's expenses were substantially higher than he is projecting going forward.  Based on the historical evidence, the expense projections provided by Mr. Washington do not seem reasonable.

Mr. Washington also stated that he has begun to pass expenses on to his tenants in an effort to reduce his own expenses.  However, when questioned specifically about which tenants were paying pass-through expenses, he could only name himself.  Mr. Washington also testified that effective now, he would no longer be paying utilities on the River Drive property, yet his Motion makes clear that this change will occur as leases are renewed.  As a result, Mr. Washington will continue to incur utility expenses through July 2011.  Several of the River Drive tenants are from homeless shelters, and the ability of these tenants to pay rent plus utilities is

suspect.  Several of these River Drive tenants were past due for rent in the Debtors' first case and

have not become current.  Additionally, Mr. Washington testified that a specific tenant would be

paying water expenses and providing supplies for one of the Gervais Street buildings; however,

that same tenant failed to pay rent in the past for a period of six months.  It was also clear from

cross-examination of Mr. Washington that he has not enforced lease provisions providing for

rent escalation, cost increases, and late fees in the past.

Mr. Washington also focused on the fact that he has obtained several additional tenants

since his previous case and therefore is making more in rental income.  From the evidence that

Mr. Washington submitted to the Court, it does appear that he has obtained some additional

tenants since his previous case was dismissed in September 2010.  Documents admitted into

evidence show that Mr. Washington currently has three vacant units at 1815 Gervais Street and

no vacant units at 1811 Gervais Street; however, one of the leases listed for 1811 Gervais Street

is a tenant that has not yet moved in and will not do so until, Mr. Washington claims, May 2011.

How many tenants currently reside at 2917 River Drive is unclear.  Debtors' Schedule A

indicates that the building has only four units; however, Mr. Washington submitted to the Court

five leases for tenants residing at that property, and contended that there were two more River

Drive leaseholders whose leases were not contained in the evidence submitted.  Apparently some

of the River Drive tenants share units, as Mr. Washington identified seven leases but the building

only contains four units.

The evidence also shows that several tenants are delinquent on rent, and some have not

paid rent for several months.  In fact, in July 2010, Mr. Washington apparently renewed a lease

with a tenant who did not pay rent for a six month period.  Mr. Washington stated that he had

provided notice to those who were delinquent that they would be evicted if they didn't cure their

deficiencies. However, the form and effect of this notice was unclear. Additionally, Mr. Washington stated in his previous case that he was in the process of evicting some non-paying tenants, but at least one of those tenants remains a leaseholder.

Mr. Washington also continues to paint unjustifiably rosy pictures regarding his financial future. Mr. Washington testified that he has a tenant that will be moving into his 1811 Gervais Street property soon, probably in late May 2011, and will pay rent of $2,350 per month. However, in Debtors' previous case, Mr. Washington stated that this very same tenant would be moving in soon. The fact that this lease has not yet materialized is cause for concern. Mr. Washington testified that the proposed tenant is working with architects and engineers to complete blueprints and stated that "sheetrock will go up soon." It is simply not realistic that a new tenant without approved blueprints will be in place in two months. In Debtors' previous case, Mr. Washington stated on numerous occasions that he had new tenants that would be moving in soon; however, these leases never came to fruition. Mr. Washington's promises of future, more profitable times are not sufficient to show a change in circumstances from the previous case. In sum, although Debtors claim that their financial circumstances have changed substantially, it appears to the Court that, with minor exceptions, Debtors have the same debt, same business, same properties, and same financial circumstances as they did in their previous case. The Court finds that there has not been a substantial change in Debtors' financial circumstances and therefore, a presumption arises under section 362(c)(3)(C)(i)(III) that Debtors' case was not filed in good faith.

The Court also notes that the same presumption would also arise under section 362(c)(3)(i)(III)(bb). That subsection provides that a presumption that a debtor's case was not filed in good faith will arise if the court finds reason to conclude that the current case will not be

concluded "with a confirmed plan that will be fully performed." 11 U.S.C. § 362(c)(3)(C)(i)(III)(bb).    The same evidence that led the Court to conclude that Debtors' financial circumstances have not changed also leads to the conclusion that Debtors will be unable to successfully complete a chapter 11 plan.  Debtors' rental income has been unreliable in the past and is not reliable going forward. Debtors' expense projections, as explained above, are unreasonable given historical expenses.  In this situation, Debtors will likely be unable to present a confirmable plan, much less successfully complete it.  A presumption also arises under section 362(c)(3)(C)(i)(III)(bb).

Once it is established that there has been no substantial change in a debtor's financial affairs, a presumption of bad faith arises, and the debtor may only rebut this presumption by clear and convincing evidence of good faith. *In re Mark*, 336 B.R. 260, 264–65 (Bankr. D. Md. 2006). Clear and convincing evidence is a somewhat stringent standard, requiring a showing of proof "beyond 'preponderance,' but below 'beyond reasonable doubt.'" *Mark*, 336 B.R. at 265. *See also In re Corbin*, No. 05-90280-SD, 2006 WL 5737842, at *3 (Bankr. D. Md. Jan. 19, 2006) (quoting *Jones v. Pitt County Bd. of Educ.*, 528 F.2d 414, 417 (4th Cir. 1975)) ("Clear and convincing evidence 'is that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the [facts] sought to be established.'") (alteration original).

"Good faith" is not defined in the Bankruptcy Code, but its meaning has been interpreted by numerous courts in a variety of contexts.  The tests for good faith that courts have used in other contexts, such as in considering case dismissal or plan confirmation, have also been found to apply in the context of a motion to extend the automatic stay.  *In re Thomas*, 352 B.R. 751, 756 (Bankr. D.S.C. 2006) ("[T]he legislature's failure to define the phrase 'good faith,' leads this

Court to employ the term 'good faith' with the judicial gloss that has developed and evolved in other contexts."). Thus, in determining whether a debtor has rebutted the presumption of bad faith by showing good faith, the Court should consider the totality of the debtor's circumstances. Various courts have set forth a number of different factors to consider. *See In re Havner*, 336 B.R. 98, 103 (Bankr. M.D.N.C. 2006) (providing seven factors to consider in evaluating a motion to extend stay); *In re Winters,* No. 06-70447, 2006 WL 3392890, at *4 n.8 (Bankr. W.D. Va. Nov. 22, 2006) (acknowledging the factors set forth in *Havner* but declining to apply them because doing so would not change the outcome). *See also Mark*, 336 B.R. at 266 (discussing and utilizing the factors set forth in *Neufeld v. Freeman,* 794 F.2d 149 (4th Cir. 1986), as well as the two factor test set forth in *Carolin Corp. v. Miller,* 886 F.2d 693 (4th Cir. 1989) to decide a motion to extend stay).

Regardless of what test is used for good faith, Debtors have failed to rebut the presumption that their case was filed in bad faith. The evidence presented in support of Debtors' Motion tends to show that Debtors' circumstances have not changed since their prior filing. Debtors have not provided the Court with realistic, accurate projections of their future income and expenses. Debtors will not be able to propose and confirm a successful plan. Based on the totality of Debtors' circumstances, Debtors have not rebutted the presumption arising under section 362(c)(3)(C)(i)(III) and 362(c)(3)(C)(i)(III)(bb). Debtors' Motion is denied.

## <u>CONCLUSION</u>

A presumption that Debtors' chapter 11 case was not filed in good faith arises under section 362(c)(3)(C)(i)(III) and 362(c)(3)(C)(i)(III)(bb), because there has been no substantial change in Debtors' financial affairs and because it appears that Debtors will be unable to fully perform a confirmed chapter 11 plan. Debtors have failed to rebut the presumption by clear and

convincing evidence showing that their case was filed in good faith.  Debtors' Motion to Extend

Stay is denied.  The automatic stay will expire on March 5, 2011, thirty days after the filing of

Debtors' current chapter 11 case.

　　　　　AND IT IS SO ORDERED.

**FILED BY THE COURT**
**03/04/2011**



Entered: 03/04/2011

David R. Duncan
US Bankruptcy Judge
District of South Carolina